**DISTRICT OF OREGON**
**F I L E D**
**September 24, 2010**
**Clerk, U.S. Bankruptcy Court**

Below is an Opinion of the Court.

ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | Bankruptcy Case |
| ) | No. 10-30406-elp11 |
| REMINGTON RANCH, LLC, ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| REMINGTON RANCH, LLC, ) | Adversary No. 10-3093-elp |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | MEMORANDUM OPINION |
| COLUMBIA STATE BANK, Successor-in- ) | |
| Interest to Columbia River Bank, a ) | |
| Washington State Chartered Bank, ) | |
| ) | |
| Intervenor-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| HOOKER CREEK COMPANIES, LLC, an ) | |
| Oregon Limited Liability Company, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Page 1 - MEMORANDUM OPINION

Remington Ranch, LLC ("debtor") filed this adversary proceeding seeking a declaratory judgment that the construction lien asserted by defendant Hooker Creek Companies, LLC ("HCC") is void. After the court granted Columbia State Bank's ("Columbia") motion to intervene, Columbia joined in debtor's motion for summary judgment.

The court heard oral arguments on the motion, during which debtor contended that HCC's purported lien was invalid due to a deficient claim of construction lien. In the alternative, debtor argued that the lien is void because of HCC's failure to obtain a license from the Construction Contractors Board ("CCB"). Columbia argued, and debtor concurred, that HCC waived its right to a construction lien when it accepted a deed of trust to secure payment of the amounts due from debtor.

## FACTS

In January 2007, Hooker Creek Asphalt & Paving, LLC ("HCAP") submitted an offer for services related to improving the land on which debtor intended to build a destination resort. Soon thereafter, debtor accepted the offer and HCAP began work later in the year. Concise Stmt. of Material Facts ("CSF") ¶ 2. HCC accepts the basic timeline as described in debtor's concise statement, but argues that HCC was the contractor and HCAP was merely a subcontractor. Def. Resp. to Pltf's CSF ¶ 2.

On October 25, 2007, after debtor had defaulted on its payment obligations, debtor granted HCC a line-of-credit trust deed to secure the unpaid amounts owing. The trust deed was recorded in the Crook County land records on October 30, 2007. Martinez Decl., Exh. 1.

On January 3, 2008, HCC filed an "Amended Claim of Construction

Page 2 - MEMORANDUM OPINION

Lien"[1] for $4.4 million in unpaid invoices. CSF ¶ 3; Stokes Decl., Exh. 5. HCC did not obtain a CCB license until April 7, 2008. CSF ¶ 6. HCC filed suit in state court on April 21, 2008, seeking to foreclose its construction lien. That action was stayed by debtor's chapter 11 filing. Id. ¶ 7.

## SUMMARY JUDGMENT STANDARDS

A court should grant summary judgment on a claim "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (applicable to adversary proceedings through Fed. R. Bankr. P. 7056). The movant has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the non-moving party. Horphag Research Ltd. v. Pellegrini, 337 F.3d 1036, 1040 (9th Cir. 2003). The primary inquiry is whether the evidence presents a material issue of fact that requires a trial, or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a finder of fact might return a verdict in its favor. Id. at 257. A non-moving party "may not rely merely on allegations or denials in its

---

[1] The parties have not specified why the lien claim was labeled "Amended" nor does the record contain a copy of any prior lien claim.

Page 3 - MEMORANDUM OPINION

own pleading," but must respond with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

DISCUSSION

1. <u>Relevant Statutes</u>

Oregon law allows a construction lien to be claimed by "[a]ny person performing labor upon, transporting or furnishing any material to be used in, or renting equipment used in the construction of any improvement," to secure payment "for the labor, transportation or material furnished or equipment rented at the instance of the owner of the improvement or the construction agent of the owner." ORS 87.010(1) Additionally, a construction lien may be claimed by "[a]ny person who engages in or rents equipment for the preparation of a lot or parcel of land." ORS 87.010(2).

Subject to certain exceptions, "a contractor may not perfect a construction lien . . . or commence an arbitration or a court action for compensation for the performance of any work . . . unless the contractor had a valid license issued by the [Construction Contractors Board] . . . (a) At the time the contractor bid or entered into the contract for performance of the work; and (b) Continuously while performing the work for which compensation is sought." ORS 701.131(1).

2. <u>HCC's Compliance with Lien Statutes</u>

Debtor argues that all work on the project was performed by HCAP, and thus HCAP was the only party that could claim a construction lien. Pltf. Mem. at 7. During the state-court litigation, HCC admitted that "[a]ll of the construction labor on the Remington Ranch project was provided by [HCAP]." Stokes Decl., Exh. 11 ¶ 3 (Affidavit of HCC

Page 4 - MEMORANDUM OPINION

President John Fournier). Although HCC now denies that HCAP provided all labor (Def. Resp. to Pltf. CSF ¶¶ 4-5), it does not provide any evidence to substantiate this denial, instead relying on the theory that HCC was the prime contractor and HCAP was merely a subcontractor. Def. Mem. in Opp. to Mot. for Summary Judgment ("Def. Opp.") at 3. Debtor responds that there is no legal authority allowing a contractor to perfect a lien for a debt owed to a subcontractor. Pltf. Reply at 6-7.

      A.    <u>Who are the Parties to the Construction Contract?</u>

As a threshold matter, the court must address the disagreement over the precise entity with which debtor entered into a construction contract. Under ORS 87.010(1), a lien claimant must have had a contract with the landowner or its construction agent. See <u>Steel Prods. of Or. v. Portland Gen. Elec.</u>, 47 Or. App. 597, 602 (1980). I find that there is a disputed issue of material fact as to whether HCC had the requisite contractual relationship with debtor.

HCC claims that debtor signed a contract with HCC and that HCAP was simply a subcontractor. The facts are not as clear as HCC portrays them. The contract the parties originally executed on June 20, 2007, states that it is "between Remington Ranch LLC . . . and Hooker Creek." Stokes Decl., Exh. 11 at 5. The problem with this language is that there is no entity named "Hooker Creek." HCC's parent company, D Arrow Mgmt, LLC, owns or otherwise controls nine subsidiary entities with the phrase "Hooker Creek" in the name. <u>Id.</u>, Exh. 8 at 7. Thus, at first glance, the original contract's reference to "Hooker Creek" appears to be ambiguous.

The contract's ambiguity would appear to be easily resolved by

Page 5 - MEMORANDUM OPINION

referring to the original proposal that HCAP submitted to debtor, and which was attached to the contract. See id., Exh. 11 at 30. The proposal was drafted by HCAP, refers repeatedly to HCAP's anticipated performance, and warns that HCAP may perfect a construction lien. The proposal makes no mention of any other Hooker Creek company. Because attached documents are incorporated by reference (see id., Exh. 11 at 5), the HCAP proposal is thus within the "four corners" of the contract. 11 Richard A. Lord, Williston on Contracts § 30:25, at 234-235 (4th ed. 1999) ("Where a writing refers to another document, that other document . . . becomes constructively a part of the writing, and in that respect the two form a single instrument. The incorporated matter is to be interpreted as part of the writing." (footnote omitted)).

Accordingly, while the introductory reference to "Hooker Creek" is ambiguous, an examination of the entire contract reveals several references to HCAP, and no references to HCC. Thus, the ambiguity is resolved by considering the document as a whole and concluding that the parties are Remington Ranch and HCAP, thereby ending the court's task of interpreting the contract. See Yogman v. Parrott, 325 Or. 358, 361 (1997) (describing the three-step process of contract interpretation used by Oregon courts).

The question is, however, made more complicated by a "Modification to Contract Agreement" that the parties executed on October 25, 2007. The modification is between HCC and debtor, and makes no reference to HCAP. Stokes Decl., Exh. 11 at 17. The modification document incorporates the original contract by reference (thus, by extension, incorporating the HCAP proposal as well). Id. Accordingly,

Page 6 - MEMORANDUM OPINION

by the time the lien was filed, the governing contract consisted of three documents, which variously refer to the contractor as HCAP, HCC, and "Hooker Creek."

I find that the original contract and the modification, read together, are ambiguous as to the identity of the contractor. Because the ambiguity cannot be resolved through analysis of the text and context, the court must next consider extrinsic evidence of the parties' intent. Yogman, 325 Or. at 363-364. The declarations submitted thus far do not contain sufficient evidence of intent to establish, without question, which was the contracting party. Thus, summary judgment cannot be granted if the outcome necessitates a determination of the debtor's counterparty on the construction contract.

During oral arguments, debtor pointed to the language in HCAP's January 17 proposal which provides that, if signed by debtor, "[t]his document and performance becomes the agreement, acceptance and Contract." Stokes Decl., Exh. 11 at 31. Because the first "long form" contract was not signed until June 20, debtor argues that between January 18 (the date debtor accepted HCAP's proposal) and June 20, the proposal was the operative contract and therefore HCAP was the contractor. I am not persuaded by this reasoning, because the proposal refers to "this document and performance." Id. (emphasis added). As part of its performance, debtor signed the ambiguous modification. Even though the modification was executed in October, debtor's behavior is sufficient to create doubt as to its perception of the entity with which it had contracted. There are simply too many unresolved factual questions to dispose of these contractual issues on summary judgment.

Page 7 - MEMORANDUM OPINION

For purposes of this motion I must resolve disputed factual questions in favor of HCC. Accordingly, the rest of my analysis will be based on the premise that HCC was the general contractor and HCAP was a subcontractor.

### B. Could HCC Perfect a Construction Lien for HCAP's Work?

Debtor contends that whether HCAP was HCC's subcontractor is of little import, because HCC's claim of lien seeks to secure payment for services rendered by HCAP and therefore the lien is invalid on its face because HCC cannot perfect a lien covering another party's work. Pltf. Reply at 6.

Debtor's argument is not an accurate reflection of Oregon law. Debtor focuses on ORS 87.010(1), which creates a lien in favor of persons "performing labor upon . . . the construction of any improvement." The statute does not require labor to be <u>personally</u> performed by the lienor. See Brian A. Blum, <u>Mechanics' and Construction Liens in Alaska, Oregon and Washington</u> § 2.1, at 16 (4th ed. 1994) ("It is not necessary that the contractor or subcontractor actually performed the labor herself. She will acquire the lien if she supervised or provided it."). This interpretation also comports with ORS 87.070, which specifies that "[a]ny contractor may recover, upon a lien perfected by the contractor, only the amount due to the contractor according to the terms of the contract, <u>after deducting all claims of other parties</u> for work done and materials furnished for which a lien is perfected under ORS 87.035." (Emphasis added). This provision, which protects landowners from paying twice for the same work, would not be necessary if general contractors were unable to perfect a lien for work performed by subcontractors. Thus, assuming

Page 8 - MEMORANDUM OPINION

that HCC was the general contractor, its notice of lien was not facially invalid merely because it secured payment for work performed by HCAP, the alleged subcontractor.

My conclusions thus far do not dispose of the summary judgment motion, because debtor and Columbia both argue that HCC cannot enforce its lien because it did not timely register with the CCB.

3. <u>Applicability of CCB Licensing Statute</u>

HCC argues that the CCB licensing statute is largely inapplicable to the present dispute. In particular, HCC claims that it is not covered by ORS 701.131, because "the majority of defendant's lien covers materials, equipment, services, and interest charges which in no event would require a CCB license." Def. Opp. at 8-9. I find HCC's argument unpersuasive.

In advancing this argument, HCC relies on ORS 701.005(5)(a), which defines "contractor" for purposes of the CCB licensing regime. The statute defines a contractor as:

> A person that, for compensation or with the intent to sell, arranges or undertakes or offers to undertake or submits a bid to construct, alter, repair, add to, subtract from, <u>improve</u>, inspect, move, wreck or demolish, for another, any building, highway, road, railroad, excavation or other structure, <u>project, development or improvement attached to real estate</u>, or to do any part thereof.

ORS 701.005(5)(a) (emphasis added). I believe that the underlined portions of the statute are sufficient to show that HCC qualifies as a contractor vis-a-vis the work it performed for debtor.

Even more telling is HCC's trust deed, which recites that the purpose of the instrument is to secure payment for $4.1 million that HCC "was owed . . . for Sevices." Martinez Decl., Exh. 1 at 2. The same

Page 9 - MEMORANDUM OPINION

trust deed defines "services" as "the business of supplying asphalt, paving and other <u>construction materials and services</u>." <u>Id.</u> (emphasis added). Accordingly, I do not agree with HCC's theory that the construction lien statute is inapplicable to many of its charges.

4.  <u>HCC's Compliance with CCB Licensing Statute</u>

The evidence indicates that HCC received its CCB license on April 7, 2008--more than three months after HCC filed its lien claim. Stokes Decl., Exh. 6. Clearly, HCC did not comply with ORS 701.131(1), which requires a contractor to be licensed at the time of contracting and continuously during performance of the contract. Compliance with ORS 701.131(1) is a prerequisite to perfecting a construction lien or commencing an action for compensation. HCC argues that it qualifies for the safe harbor described in ORS 701.131(2)(a). I disagree.

Section 701.131(2) establishes three safe harbors for non-compliant contractors. The only safe harbor that is potentially relevant to the present case is (2)(a), which applies if a contractor satisfies each of three elements:

> (A) The contractor was not aware of the requirement that the contractor be licensed . . . and the contractor submitted a completed application for a license within a number of days established by the board, but not more than 90 days, of the date the contractor became aware of the requirement;
>
> (B) At the time the contractor perfected a construction lien or commenced any proceeding . . . the contractor was licensed by the board and properly endorsed for the work performed; and
>
> (C) Enforcement of the provisions of subsection (1) of this section would result in substantial injustice to the contractor.

ORS 701.131(2)(a). Debtor contends that HCC satisfied none of the elements. Pltf. Mem. at 10-11. It is unnecessary to determine whether

Page 10 - MEMORANDUM OPINION

HCC has satisfied elements (A) or (C), because I conclude that it does not meet the requirements of element (2)(a)(B) and thus cannot avail itself of the safe harbor.

To fully understand the requirements of (2)(a)(B), one must first grasp the scope of ORS 701.131. Although this case is focused on lien perfection, subsection (1) of ORS 701.131 prevents unlicensed contractors from undertaking three types of actions: perfecting a lien, filing a complaint with the CCB (against another contractor), and commencing arbitration or a court action for compensation or breach of contract. ORS 701.131(1). The second element of the (2)(a) safe harbor, in its entirety, requires that:

> At the time the contractor perfected a construction lien <u>or</u> commenced any proceeding subject to the provisions of subsection (1) of this section, the contractor was licensed by the board and properly endorsed for the work performed.

ORS 701.131(2)(a)(B) (emphasis added). HCC relies on the underlined "or" in the prior passage, arguing that if a contractor is licensed <u>either</u> at the time of perfection <u>or</u> at the time of filing a complaint, then non-compliance is not a bar to lien perfection. Def. Opp. at 6. Thus, continues HCC, because it was licensed at the time it filed its state court complaint, it satisfies element (B).

I do not agree with HCC's interpretation of the statute. It is true as a general matter that use of the word "or" in a statute "indicates alternatives and requires that those alternatives be treated separately"--a proposition that supports HCC's interpretation. 1A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 21:14, at 190 (7th ed. 2009). Nonetheless, "it is important not to

read the word 'or' too strictly where to do so would render the language of the statute dubious." Id. at 191. Here, "[t]he purpose of Chapter 701, ORS, is to protect the party for whom the construction work is performed." Hellbusch v. Rheinholdt, 275 Or. 307, 313 (1976). Additionally, construction lien statutes are strictly construed by Oregon courts. E.g., Anderson v. Chambliss, 199 Or. 400, 405 (1953) ("The [construction lien] statute is strictly construed as to persons entitled to its benefits and as to the procedure necessary to perfect the lien."). These policy considerations counsel in favor of construing the statute against HCC.

Moreover, reading the statute pursuant to Oregon's framework for statutory interpretation leads to the same conclusion. The Oregon Supreme Court has prescribed a three-step process for interpreting state statutes. State v. Gaines, 346 Or. 160, 171-172 (2009). First, a court must examine the text and context of the statute. Second, the court may consider legislative history offered by the parties. If an ambiguity persists after these steps, "the court may resort to general maxims of statutory construction." Id. Here the parties have cited no legislative history, thus I base my analysis on an examination of text and context.

Consideration of the CCB licensing statute's context leads to an interpretation squarely at odds with HCC's proposed interpretation. A statute's context includes other provisions of the same statute. Vsetecka v. Safeway Stores, 337 Or. 502, 509 (2004). Here, the (2)(a) safe harbor comes after ORS 701.131(1), which--broadly speaking-- prohibits unlicensed contractors from doing two things: perfecting liens and commencing certain proceedings (including CCB complaints,

Page 12 - MEMORANDUM OPINION

arbitrations, and court actions). Thus, ORS 701.131 can be raised as a defense either to lien perfection or in certain proceedings and it is logical to read the safe harbor as applying to a contractor who is licensed "[a]t the time the contractor perfected a construction lien or commenced any proceeding," <u>whichever is applicable</u>. ORS 701.131(2)(a)(B). To read the statute otherwise would allow unlicensed contractors to perfect any number of liens and then take advantage of the safe harbor by obtaining a license before foreclosing the liens. HCC's interpretation seeks to disregard this straightforward reading and create an ambiguity where there is not one. Accordingly, any dispute over the (2)(a) safe harbor can be resolved through an examination of the statute's context. Resort to general maxims of construction is unnecessary.

Finally, as a matter of policy, HCC's proposed interpretation contradicts Oregon case law holding that a putative construction lien by an unlicensed contractor is a nullity. <u>Barker v. Parker</u>, 63 Or. App. 21, 24 (1983). In HCC's case, assuming it satisfies the other elements of the (2)(a) safe harbor, HCC was free to commence the state court action, but could not rely on its alleged lien, because at the time it attempted to perfect the lien it did not qualify for the (2)(a) safe harbor, and thus a lien was never perfected.

HCC also attacks the operation of ORS 701.131 by citing the unpublished opinions of the District Court in <u>MasTec North Am. v. Coos County</u> (<u>MasTec I</u>), 2006 WL 176653 (D. Or. 2006) (order granting in part and denying in part motion to dismiss) and <u>MasTec North Am. v. Coos County</u> (<u>MasTec II</u>), 2007 WL 2027011 (D. Or. 2007) (order granting in part

and denying in part cross-motions for summary judgment). While it is true that the MasTec litigation did result in a ruling on the applicability of the predecessor to ORS 701.131, I conclude that MasTec is factually distinguishable.

As relevant here, the MasTec litigation involved a breach of contract claim (and related claims) by MasTec North America, Inc. ("MasTec NA") and MasTec, Inc. against Coos County. The county moved to dismiss under the CCB licensing statute,[2] arguing that MasTec, Inc. was not registered with the CCB and thus was prevented from filing a breach of contract action. MasTec I, 2006 WL 176653 at *2. The contract documents were patently inconsistent as to whether the county was contracting with MasTec NA or MasTec, Inc. MasTec NA was registered with the CCB, whereas the parent MasTec, Inc. was not. Id. at *4.

HCC is incorrect when it argues that the facts of the present case "are not meaningfully different from the facts in MasTec." Def. Opp. at 8. The dispute between debtor and HCC involves the perfection of a construction lien. Oregon law prohibits the assignment of unperfected construction liens. Brice Mortg. Co. v. Wodtke, 215 Or. 192, 194 (1958). MasTec, on the other hand, involved a breach of contract claim with two key differences. First, MasTec NA (the CCB-licensed entity that performed the work for Coos County) was a party to the suit, whereas here HCAP (which held a CCB license during all relevant times) has never been

---

[2] The MasTec opinions both interpret ORS 701.065, which was in force at the time. Section 701.065 was subsequently renumbered as ORS 701.131. As relevant to the present case, both versions appear to be substantially the same. For simplicity's sake, I will refer to ORS 701.065/701.131 as the "licensing statute."

Page 14 - MEMORANDUM OPINION

a party to any enforcement action.

Second, MasTec, Inc. (the unlicensed entity) argued that it was able to enforce any obligation that Coos County owed MasTec NA (the licensed entity) because MasTec NA had assigned its rights under the contract to MasTec, Inc. The District Court ruled that this assignment did not run afoul of the licensing statute. MasTec I, 2006 WL 176653 at *5. Assignment of rights under a construction contract does not appear to be prohibited by Oregon case law, whereas assignment of an unperfected construction lien is.[3] Because the current case involves the validity of a lien, MasTec can be distinguished on this basis.[4]

---

[3] HCC has not argued that it was the assignee of HCAP's lien rights. Nonetheless, HCC's reliance on MasTec could present a colorable argument if such an assignment were a possibility. There could not, however, have been an effective assignment in this case because HCAP's lien would have been unperfected at the time of assignment, thus running afoul of Brice Mortg., 215 Or. at 194.

[4] Even if I were inclined to apply MasTec, I could not do so because there is an ambiguity in the opinion on which HCC bases its argument. In denying Coos County's motion to dismiss, the District Court relied on ORS 701.055(1) which, at the time, specified that a partnership or joint venture is considered licensed by the CCB if "any of the partners or joint venturers whose name appears in the business name of the partnership or joint venture is licensed." MasTec I, 2006 WL 176653 at *4. The court noted that the evidence "[a]t a minimum . . . raises an inference that MasTec, Inc. and MasTec N.A. engaged in a joint venture or acted as one corporation with respect to the pipeline construction project." Id. at *5. In its later ruling on summary judgment, the court summarized the parties' arguments and concluded, "I adhere to my previous ruling that the evidence presented raises an inference that MasTec, Inc. and MasTec N.A. acted as one and the same corporation such that MasTec N.A.'s license could be attributed to MasTec, Inc." MasTec II, 2007 WL 2027011 at *9. The MasTec I opinion did not, however, rule that the two entities acted as one corporation--rather it said the entities acted either as a joint venture or as one corporation. Importantly, the statute allows license-sharing between joint venturers, but not between
(continued...)

Page 15 - MEMORANDUM OPINION

## CONCLUSION

I conclude that the correct reading of ORS 701.131(2)(a) requires a contractor to be licensed by the CCB at the time it perfects a lien. If the contractor is not licensed at the time of perfection, the lien is a nullity. Under this interpretation, HCC does not qualify for the safe harbor and thus it does not hold a construction lien on debtor's property.

Because I conclude that the lien is invalid by operation of ORS 701.131, I need not reach debtor and Columbia's theory that HCC waived its right to a construction lien by accepting a trust deed.

---

[4](...continued)
two corporations "acting as one." Thus, it is unclear upon what factual basis the court based its ultimate conclusion in MasTec II.

Page 16 - MEMORANDUM OPINION